RENDERED: MAY 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0495-EL

DENNIS HORLANDER                                                    APPELLANT

ELECTION APPEAL
v.        FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCHELL PERRY, JUDGE
ACTION NO. 24-CI-001903

NIRUPAMA KULKARNI; BOBBIE
HOLSCLAW, AS CHAIR OF THE
JEFFERSON COUNTY BOARD OF
ELECTIONS; KENTUCKY BOARD
OF ELECTIONS; AND MICHAEL
ADAMS, KENTUCKY SECRETARY
OF STATE                                                             APPELLEES

OPINION AND ORDER
REVERSING AND REMANDING

* * * * * *

BEFORE: COMBS, GOODWINE, AND McNEILL, JUDGES.

COMBS, JUDGE: Appellant Dennis Horlander appeals the Jefferson Circuit

Court's order denying his petition under Kentucky Revised Statutes (KRS)

118.176[1] to disqualify Appellee Nirupama "Nima" Kulkarni as a candidate for State Representative of the 40th District. We reverse and remand.

Additionally, on May 3, 2024, Appellee Nima Kulkarni filed a motion to dismiss the appeal as improper, arguing that Appellant failed to invoke the Court's jurisdiction with the correct initiating document. We deny the motion to dismiss.

Also, on May 8, 2024, Appellant Dennis Horlander filed a motion for intermediate relief under Kentucky Rules of Appellate Procedure (RAP) 21, seeking to "enjoin[] the Jefferson County Clerk and Jefferson County Board of Elections, Kentucky Board of Elections, or Kentucky Secretary of State, from releasing any election tallies or results of the Democratic primary nominating election for House District 40 until after the *de novo* review and decision of this Court or on the *bona fides* of Appellee, Nirupama Kulkarni." Mot. for Intermediate Relief, at 1. As we are addressing the merits of Horlander's appeal in

---

[1] KRS 118.176(2) provides in pertinent part:

> The bona fides of any candidate seeking nomination as the nominee of a political party or a nonpartisan or judicial nominee in a primary or election to an office as a member of a political organization, political group, or as an independent in a special or regular election may be questioned by any qualified voter entitled to vote for the candidate or by an opposing candidate by summary proceedings consisting of a motion before the Circuit Court of the judicial circuit in which the candidate whose bona fides is questioned resides.

this Opinion, we deny the motion for intermediate relief as moot.

## BACKGROUND

On January 2, 2024, Representative Kulkarni filed a notification and declaration with the Kentucky Secretary of State, seeking reelection in 2024 as the Democratic candidate for District 40 of the Kentucky House of Representatives. One of Kulkarni's two required witnesses, Sharon LaRue, signed the notification and declaration form, attesting that she was a "registered voter of the same party" as Kulkarni, a Democrat. Notably, the oath to which LaRue swore states as follows on the Kentucky State Board of Elections' declaration form:

Subscribed and sworn to before me by _NIMA KULKARNI_ this _22nd_ day of _December_, 20_23_.
_____(Name of Candidate)_____(Month)_____
_William F. Ward_          _Notary Public_          _09-14-2027_
(Signature of Notary/Officer)    (Title of Officer)    (Commission Expiration)
We, _Sharon LaRue_ and _Catherine Morton Ward_ do solemnly
(Legible printed name of Voter)    (Legible printed name of Voter)
swear that we are registered voters and members of the same Party and are from the district or jurisdiction from which the candidate seeks nomination; and that we believe _Nima Kulkarni_ to be qualified
(Name of Candidate – Please Type or Print)
to fill the office of _State Representative District 40_

It is undisputed that at the time LaRue signed the form, she was a registered Republican.

On January 5, 2024, the deadline to file all nomination papers closed. KRS 118.165. Thereafter, Kulkarni learned of LaRue's party affiliation. On January 8, 2024, LaRue changed her voter registration from Republican to Democratic. LaRue's registration became effective on January 10, 2024. Because LaRue changed her registration from one party to the other after the statutory

deadline of December 31, 2023, she may not vote in the upcoming Democratic primary election on May 21, 2024. KRS 116.055. On January 17, 2024, the Kentucky Secretary of State certified Kulkarni as an election officer to be printed on the Democratic primary election ballots.

On March 18, 2024, Horlander challenged Kulkarni's status as a bona fide candidate per KRS 118.176 with the underlying action. He argued that Kulkarni should be disqualified as a candidate in the upcoming primary election because Kulkarni's nomination form was not signed by two registered voters of the same party as Kulkarni. He asserted that because LaRue had not changed her party registration at the time she signed the notification and declaration, her signature invalidated Kulkarni's notification and declaration. Horlander further argued that LaRue could not cure this deficiency by changing her voter registration from the Republican party to the Democratic party after the form had been filed and the Kentucky Secretary of State's filing deadline had passed.

On April 25, 2024, the circuit court denied Horlander's petition to disqualify Kulkarni. The court noted that *Morris v. Jefferson County Clerk*, 729 S.W.2d 444 (Ky. 1987), was factually similar to the instant dispute because it dealt with a witness who was not a registered voter of the same party when he signed the nomination papers.

-4-

However, the Kentucky General Assembly amended KRS 118.125 in 1990. The amendment removed a proviso in the previous text requiring that both nominating witnesses be members of the candidate's party "at the time of filing." Circuit Court's Opinion, at 3. The court found that Kulkarni had tendered an "Affidavit from Senator Gerald Neal who co-sponsored Senate Bill 47 that made this change, indicating that this change was made deliberately by the General Assembly and as a result of the Supreme Court's decision in *Morris*." *Id.* The circuit court remarked:

> The General Assembly intentionally removed the timing component of KRS 118.125 in 1990. This removal must be presumed to effect a change in the law. *Eversole v. Eversole*, 185 S.W. 487, 489 (Ky. 1916). It is clear therefore that as long as the other requirements of KRS 118.125 are met, the paperwork is valid and can be properly certified by the Secretary of State. That is precisely what happened in this case.

*Id.* We disagree with the circuit court's interpretation of KRS 118.125 and its holding that *Morris* is no longer good law.

Before we address the merits of the appeal, we first must resolve Kulkarni's motion to dismiss the appeal for failing to invoke this Court's jurisdiction. She argues that Horlander should have filed a motion to set aside the circuit court's order because the case *sub judice* involved an action under KRS 118.176. However, "[b]ecause the expedited appeal procedure set forth in KRS 118.176(4) applies only to orders disqualifying a candidate, [Horlander] [is] not

entitled to move the Court of Appeals to set aside the order [of April 25, 2024]."

*See Gibson v. Thompson*, 336 S.W.3d 81, 83 (Ky. 2011). "[T]he order dismissing is a final and appealable order." *Id.* Accordingly, Horlander filed the appropriate initiating document from a final and appealable order and the motion to dismiss is DENIED. We now proceed to the merits of the appeal.[2]

## STANDARD OF REVIEW

This appeal comes before the Court upon the circuit court's statutory interpretation of KRS 118.125(2) and its analysis of *Morris v. Jefferson County Clerk*, 729 S.W.2d 444 (Ky. 1987). We review these legal questions *de novo*. *Hardin v. Montgomery*, 495 S.W.3d 686, 694 (Ky. 2016) (citing *McClendon v. Hodges*, 272 S.W.3d 188, 190 (Ky. 2008)).

## ANALYSIS

The partisan nominating process is governed by KRS 118.125(2), which provides in pertinent part:

> The notification and declaration shall be in the form
> prescribed by the State Board of Elections. It shall be
> signed by the candidate and by not less than two (2)
> registered voters of the same party from the district or
> jurisdiction from which the candidate seeks nomination.

---

[2] Kulkarni additionally argues this Court lacks jurisdiction to review the circuit court's order denying Horlander's KRS 118.176 petition to disqualify Kulkarni as a bona fide candidate because the statute does not explicitly grant appellate rights to a losing petitioner. We find this argument without merit. *See* KY. CONST. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court[.]"); *see also Gibson*, *supra*.

Since the 1990 amendments of KRS 118.125 relied upon by the circuit court, the Kentucky Supreme Court and this Court have cited and referenced *Morris* several times as controlling precedent. *See Barnard v. Stone*, 933 S.W.2d 394, 395 (Ky. 1996) (rejecting the doctrine of "substantial compliance and invalidat[ing] the candidacy"); *Stoecklin v. Fennell*, 526 S.W.3d 104, 107 (Ky. App. 2017) (citing *Morris* for the proposition that the Kentucky Supreme Court has "established it is mandatory that a nominating petition be signed by the requisite number of qualified voters, or a candidate will be disqualified from being elected"); *Petition Committee by and Through a Majority of its Members v. Board of Education of Johnson County, Kentucky*, 509 S.W.3d 58, 67 (Ky. App. 2016) (holding that *Morris* involved a "[rejected] claim of substantial compliance . . . where [a] candidate failed to obtain [the] affidavit of two registered voters on his nominating petition as required by statute"); *Scott v. Board of Educ. of Green County*, No. 2008-CA-001687-MR, 2009 WL 3151097, at *4 (Ky. App. Oct. 2, 2009) (VanMeter, J., concurring) (accord).

Thus, *Morris* has been cited by this Court and the Kentucky Supreme Court many times since the 1990 amendments to KRS 118.125 to demonstrate when a candidate must strictly comply with election laws to be a bona fide nominated candidate in a primary or general election. We find nothing from our review of the case law or the record to support that *Morris* has been abrogated or

-7-

overruled.

Kulkarni points to Senator Gerald Neal's "affidavit" in support of her position that the General Assembly amended KRS 118.125 with the intention of abrogating *Morris*. Senator Gerald Neal's written statement reflects that in 1990 he "co-sponsored Senate Bill 47, which implemented wide-ranging changes to Kentucky's election laws." R. at 128, ¶ 3. He further states that "[i]n addition to other changes, Senate Bill 47 removed the words 'at the time of filing' from KRS 118.125(3). The bill did not replace those words in any of the provision[s] of the Kentucky Revised Statutes, and no other timing requirement was placed in KRS 118.125 by Senate Bill 47 or, to my knowledge, any other bill since that time." R. at 128, ¶¶ 4-5.

The circuit court found that Senator Gerald Neal's statement "indicat[es] that this change was made deliberately by the General Assembly and as a result of the Supreme Court's decision in *Morris*." Circuit Court's Opinion, at 7. But nothing in the statement definitively demonstrates the General Assembly amended KRS 118.125 as a result of the Kentucky Supreme Court's decision in *Morris*. Furthermore, Senator Gerald Neal's written statement is not notarized, and therefore, was not sworn.[3]

---

[3] Kentucky Rule of Civil Procedure (CR) 43.13(1) provides that "[a]ffidavits authorized or permitted . . . in any statutory proceeding[] shall be a written statement or declaration sworn to or affirmed before an officer authorized to take depositions by Rule 28." CR 43.13(2) further

We conclude that we are required to apply the precedent of *Morris* and do so today. "[A]s an intermediate appellate court, this Court is bound by established precedents of the Kentucky Supreme Court. SCR [Kentucky Supreme Court Rules] 1.030(8)(a). The Court of Appeals cannot overrule the established precedent set by the Supreme Court or its predecessor Court." *King v. King*, 638 S.W.3d 464, 471 (Ky. App. 2021) (quoting *Smith v. Vilvarajah*, 57 S.W.3d 839, 841 (Ky. App. 2000)).

In *Morris*, Geoffrey Morris filed his nomination papers for the office of the Commonwealth's Attorney. 729 S.W.2d at 444-45. One of his witnesses, J. Michael Smither, "was not a registered Democrat voter at the time he signed the affidavit or at the time the nomination papers were filed." *Id.* at 445. Smither had been purged from the list of registered voters. He was not a qualified voter or elector when he filed his affidavit. *Id.* After the deadline to submit candidate nominations had passed, but before the primary, Smither registered to vote. *Id.*

Morris argued that "by registering to vote after the filing deadline had past [*sic*], but more than 30 days before the primary election, Smither became a qualified elector eligible to vote in the primary election." *Id.* The Kentucky Supreme Court rejected this argument, holding that "[t]he affidavit required by

---

mandates that "[e]very affidavit shall be subscribed by the affiant; and the certificate of the officer or person before whom it is made shall be written separately, following the signature of the affiant, and shall be proof of the time and manner of the affidavit being made."

K.R.S. 118.125(3) must be signed by two electors who *are* (**not who may thereafter become**) members of the party to which the candidate belongs." *Id.* at 445-46 (some emphasis in original).[4] "We interpret this to mean that at the time the affidavit is signed and the nomination papers filed, the affiant must be a voter registered to vote as a member of the party to which the candidate belongs." *Id.* The Court concluded that because "Morris filed his nomination papers and attached thereto only one valid affidavit of an elector who was a member of the party to which he belonged," he failed to comply with KRS 118.125(3). *Id.* The *Morris* Court held that KRS 118.125 requires strict compliance with its provision mandating that a witness be a member of the same party as the nominating candidate. The deficiency of this mandatory requirement cannot be cured at any time thereafter.[5] "The reasoning behind such a mandatory provision is to ensure that the voters who sign a petition are eligible to vote for that candidate." *Stoecklin*, 526 S.W.3d at 107.[6]

---

[4] The Kentucky Supreme Court did not focus on the phrase "at the time of filing" in the pre-1990 version of KRS 118.125. Rather, the Kentucky Supreme Court emphasized the present tense of the verb "to be," thereby stressing that the witnesses must be registered voters of the candidate's political party at the time the affidavit is signed. The current form of the affidavit required by KRS 118.125(1) continues to use the present tense – "are." *See supra*, at 3.

[5] We further emphasize that the nominating candidate holds the burden to ensure that his or her witnesses are members of his or her party. *Morris*, 729 S.W.2d at 446 ("The law places the duty upon the candidate to support his nomination papers with the affidavits of two electors.").

[6] KRS 118.125 requires witnesses to be members of the same political party to prevent the gamesmanship of Kentucky elections. Kentucky law explicitly forbids dummy candidates. "No person shall file a notification and declaration to become a candidate in a primary election as a

-10-

Here, LaRue was a registered Republican when she signed Kulkarni's nomination papers. She did not change her registration until after she signed the witness affidavit, after Kulkarni's nomination papers were filed with the Kentucky Secretary of State, and after the January 5, 2024, deadline to submit nominating papers had expired. *See* KRS 118.165. LaRue, consequently, is not allowed to vote for Kulkarni in the 2024 Democratic primary election, and, therefore, she is not a "registered voter of the same party" as Kulkarni. *See* KRS 118.125(2).

## CONCLUSION

Accordingly, we REVERSE the circuit court's order denying Horlander's petition to disqualify Kulkarni pursuant to KRS 118.176. We REMAND this matter with directions that the Jefferson Circuit Court enter an order granting Horlander's petition to disqualify Kulkarni as a bona fide candidate for District 40 of the Kentucky House of Representatives and for any other proceedings not inconsistent with this Opinion and Order. Horlander's remaining arguments are moot.

IT IS ORDERED that Kulkarni's motion to dismiss the appeal for failing to invoke this Court's jurisdiction is DENIED.

---

pretended, fictitious or 'dummy' candidate for the purpose of influencing or controlling the selection of challengers or inspectors or officers of election[.]" KRS 118.136. Requiring a witness to be a member of the same party as the nomination candidate ensures the voters who support that candidate have an interest in the candidate.

-11-

IT IS FURTHER ORDERED that Horlander's motion for intermediate relief under RAP 21 is DENIED AS MOOT.

ALL CONCUR.

ENTERED:  May 15, 2024_____          _____
                                  JUDGE, COURT OF APPEALS


BRIEF FOR APPELLANT:

Stephen Joseph Megerle
Covington, Kentucky

BRIEF FOR APPELLEE
NIRUPAMA KULKARNI:

James Craig
Louisville, Kentucky

BRIEF FOR APPELLEE
BOBBIE HOLSCLAW:

Kathryn Meador
Natalie Johnson
Louisville, Kentucky